THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN: 256535)
Cameron@sehatlaw.com
Sarah Kahn, Esq. (SBN 341901)
Sarah.k@sehatlaw.com
5100 Campus Dr.
Newport, CA 92660
Telephone: (949) 825-5200

Attorneys for Marie Williams, Anthony Williams, Daniel McClanaham, and Russell Williams Sr.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARIE WILLIAMS, individually; RUSSELL WILLIAMS SR., individually; DANIEL McCLANAHAM, individually; ANTHONY WILLIAMS, individually and as Personal Representative of the Estate of RUSSELL WILLIAMS Deceased,<br><br>     Plaintiffs,<br><br> vs.<br><br>COUNTY of Los Angeles, a Governmental Entity; DOE Defendants<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT**<br>1.**Deliberate Indifference to a Substantial Risk of Harm to Health & Safety 42 U.S.C. § 1983- 14th Am.** (*Gordon v. County of Orange claim*)<br>2.**Violation of Title II of The Americans with Disabilities Act and The Rehabilitation Act**<br>3.*Monell*-**Failure to Train-42 U.S.C.§1983**<br>4.*Monell* – **Unconstitutional Custom, Practice & Policy-42 U.S.C. §1983**<br>5. **14th Amendment-Interference with Familial Relations**<br>6. **Negligence – Wrongful Death (State)**<br>7. **Bane Act C.C. 52.1 Et. Seq. (State)**<br>8. **Failure to Summon Medical Care G.C. 845.6 & 844.6**<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.     Plaintiffs, on behalf of Russell Williams ("Decedent" or "Mr. Williams"), who was incarcerated at Men's Central Jail and Twin Towers Correctional Facility, jointly bring this action against the county of Los Angeles ("COUNTY"), defendant medical and custody staff, and DOE Defendants for monetary damages to redress the decedent's injuries and death resulting from Defendants' deliberate indifference to and reckless disregard of Mr. Williams' constitutional rights and liberties.

2.     Plaintiffs bring this action under the Eighth and Fourteenth Amendments of the United States Constitution and the Civil Rights Act of 1871, as codified by 42 U.S.C. § 1983, for injuries and death suffered as a result of the Defendants' substantial and deliberate indifference to Decedent's health and welfare while he was in their custody.  Plaintiffs further bring their 14th Amendment Deliberate Indifference claim under the recent 9th Circuit Court of Appeals decision in *Gordon v. County of Orange et* al. *888 F.3d 1118*. This is a civil action seeking damages against the Defendants for committing acts under color of law, depriving Decedent of rights secured by the Constitution and laws of the United States (42 U.S.C. § 1983), violating Title II of the Americans with Disabilities Act and the Rehabilitation Act (ADA), and failing to establish adequate policies, procedures, and training, which resulted in the subject incident.

3.     Defendants, COUNTY, and the Men's Central Jail officials and management and employees including all named defendants and DOE Defendants were deliberately indifferent by, without limiting other acts and behaviors: (1) failing to respond to multiple requests for medical attention for Mr. Williams made by individuals incarcerated in a congregate dorm; (2) deliberately ignoring and failing to heed up to three weeks of obvious signs and symptoms of illness, including dizziness, chills, and lethargy; (3) denying Mr. William's request for a COVID-19 vaccine despite the known risk of harm or death; (4) failing to

otherwise protect Mr. Williams, who was housed in an 88 person open dorm, from exposure to COVID-19; (5) implementing constitutionally inadequate monitoring procedures and failing to train defendants in recognizing and responding appropriately to symptoms of COVID-19; (6) failing to provide any mental health accommodations to ensure that Mr. Williams could effectively communicate symptoms and seek and obtain medical treatment; (7) failing to discover that Mr. Williams was unconscious and his breathing was labored during count; and (8) failing to follow adequate count and routine check policies and procedures. Defendants deprived the Decedent of his rights as guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States and the Americans with Disabilities Act.

4.     As a consequence of the defendants' actions, Decedent Russell Williams suffered debilitating physical, emotional, and psychological injury all proximately causing his death, constituting a clear deprivation of his constitutional rights.

## JURISDICTION AND VENUE

5.     This action is filed under the Cruel and Unusual Clause of the Eighth Amendment and Due Process Clause of the Fifth Amendment as incorporated by the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983, to redress injuries and the death suffered by the plaintiff Decedent at the hands of defendants.

6.     This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343.

7.     On February 10, 2022, five months and three days after the death of Mr. Williams, Plaintiff Marie Williams ("Ms. Williams") filed a Tort Claim in propia persona.

8.     On March 10, 2022, five months and five days before this claim was filed, Intercare Holdings Insurance Services informed Ms. Williams in writing that

the claim was referred to them by the Los Angeles County Board of Supervisors and that they were denying the claim as untimely because it was filed outside of the six-month statute of limitations, although it was not.

9.       On March 25, 2022, Ms. Williams, by and through her counsel of record, submitted a *California Public Records Act Request* for documents related to the in-custody death of Mr. Williams.

10.       On March 25, 2022, Ms. Williams, by and through her counsel of record, submitted a *Spoliation of Evidence Notice* to Twin Towers Correctional Facility requesting the preservation of surveillance video footage and documents related to the medical welfare and death of Mr. Williams, amongst other items of evidence to be preserved.

11.       On April 8, 2022, the County of Los Angeles sent a responsive letter advising of an extension of an additional fourteen days under Gov't Code § 6253(c) due to "the need to coordinate efforts to search for, collect, and appropriately examine potential responsive records across a variety of County departments," and providing a new deadline of April 22, 2022.

12.       On May 12, 2022, the Office of the Sheriff, Los Angeles County, sent a letter denying the CPRA request and providing notice that "all requested records are exempt from disclosure" under Gov't Code §§ 6254(c), 6254(f), and 6254(k) and would also be denied due to "the ongoing investigation of Mr. Russell William's death."

13.       Jurisdiction and venue are proper in the Central District of California in that the acts of misconduct occurred within the Central District of California with such acts causing the death of Mr. Williams.

14.       At all relevant times, Mr. Williams was a detainee at the Men's Central Jail operated by the Los Angeles County Sheriff's Department.

15.       Venue is proper in this Court pursuant to Title 28 U.S.C. § 1391(b) and (c).

**PARTIES**

16.     Plaintiff Marie Williams, hereinafter referred to as "Ms. Williams," is the mother of Russell Williams, hereinafter referred to as "Mr. Williams" or "Decedent." Ms. Williams is acting in the capacity of a personal representative of the estate of Mr. Williams and individually.

17.     Plaintiff Russell Williams, Sr., hereinafter referred to as "Mr. Williams, Sr.," is the father of Russell Williams, hereinafter referred to as "Mr. Williams" or "Decedent." Mr. Williams, Sr. is acting in the capacity of a personal representative of the estate of Mr. Williams and individually.

18.     Plaintiff Anthony Williams, hereinafter referred to as "A. Williams" is the adult child and successor-in-interest to Mr. Williams. A. Williams is also acting in the capacity of a personal representative of the estate of Mr. Williams and individually.

19.     Plaintiff Daniel McClanaham, hereinafter referred to as "McClanaham" is the adult child and successor-in-interest to Mr. Williams. McClanaham is also acting in the capacity of a personal representative of the estate of Mr. Williams and individually.

20.     Defendant County of Los Angeles, hereinafter known as "COUNTY", is a governmental entity that acts through individuals to establish its policies and that is capable of being sued under federal law. COUNTY, through the Los Angeles Sheriff's Department, operates the Men's Central Jail, a county jail located in Los Angeles, California.

21.     Defendant DOES 1-10, hereinafter referred to as "NAME/DOE," is/are an employee(s) of the Los Angeles Sheriff's Department, was at times relevant to this complaint employed in the capacity of a jail deputies at the Men's Central Jail. Defendant DOES are duly authorized employees and agents of COUNTY and were acting within the course and scope of their perspective duties

as staff with the complete authority and ratification of their principal, COUNTY. Defendant DOES is/are being sued in their individual capacity(ies).

22.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and County entity defendants had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant herein.

## FACTUAL ALLEGATIONS

23.     On June 16, 2021, Mr. Williams was booked into the Los Angeles Twin Towers Correctional Facility. He was arrested for an alleged violation of Cal. Penal Code § 3455.

24.     At intake, on June 16, 2021, medical staff A. Lopez and Dr. Angelique Campen noted that Mr. Williams suffered from schizoaffective disorder, insomnia, and manic depression, but cleared Mr. Williams for incarceration.

25.     At intake, on June 16, 2021, medical staff A. Lopez and Dr. Angelique Campen noted that Mr. Williams' Lung CTA appeared healthy and that he denied any symptoms of illness.

26.     At intake, on June 16, 2021, medical staff A. Lopez and Dr. Angelique Campen recommended continuing mental health medications, namely Paxil and Zyprexa. Mr. Williams was not prescribed other medication.

27.     On June 17, 2021, Jailer Tucker completed a Behavioral Observation and Mental Health Referral form (BOMHR) and noted that Mr. Williams suffered from schizoaffective disorder and depression.

28.     During the period of his incarceration, because he was confined to a jail setting, Mr. Williams was exclusively dependent upon the correctional and medical staff for his medical needs. Reciprocally, the correctional and medical staff had a constitutional obligation to properly attend to his medical needs.

29.     On July 1, 2021, the Los Angeles County Sheriff's Department issued a Comprehensive Release Plan Document. The plan included a "Delayed Release Notification."

30.     Mr. Williams' Release Plan included recommendations to go to LAC + USC Medical Center and Exodus Recovery substance use treatment center. Mr. Williams was not released before his death on September 7, 2021.

31.     On or about August 22, 2021, Mr. Williams was transferred to Men's Central Jail.

32.     Mr. Williams was housed in a congregate dorm ("Dorm") designated for people with "unspecified mental health issues." Dorm is an 88-person, open living area. Dorm includes a shared restroom facility and shared shower facility as well as two shared gaming tables. Dorm is furnished with four rows of bunk beds closely spaced. There is constant direct contact and proximity between people incarcerated in Dorm in conflict with the CDC guidelines recommending social distancing. The CDC recommends carefully monitoring people in congregate settings for "symptoms of COVID-19 and other illness, including mental health concerns."

33.     On or about the week of August 23, 2021, Mr. Williams began experiencing symptoms of illness including dizziness, chills, and lethargy.

34.     The Coroner Investigator's Narrative, Autopsy Report, and Ms. Williams all indicate that incarcerated people reported Mr. Williams' symptoms to custody staff up to three weeks before his death on September 7, 2021. The Autopsy Report indicates "recent clinical complaints and record of labored breathing … consistent with acute respiratory distress syndrome (ARDS)."

35.     According to his autopsy report, Mr. Williams requested a COVID-19 vaccine, but there is no documentation indicating he received one. The only notation regarding the COVID vaccine in his medical history is one note in his medical records indicating that he responded "No" in response to "Does patient

want COVID vaccine?" in a document dated June 18, 2021. Medical records do not appear to include a signed informed consent to decline the vaccine. According to the Investigator's Narrative and autopsy document, Mr. Williams requested the vaccine in August.

36.     On August 23, 2020, at approximately the time when Mr. Williams began experiencing symptoms of illness, Mr. Williams was seen by Registered Nurse Guido Reyes for a skin infection on his foot that had persisted for approximately one month. Mr. Reyes did not note any signs of illness or medical distress. Approximately two weeks later, on September 6, 2020, Mr. Williams fell in the shower. He was unable to walk and was carried to his bunk by other incarcerated people before midnight count. He fell unconscious in his bunk and died shortly after midnight on September 7, 2021.

37.     The Los Angeles Sheriff Department's Custody Division Manual § 6-07/000.00 instructs facility staff to conduct count and safety checks at regular intervals. Staff must check "every inmate" and must "look at the inmate[s] for signs of life (e.g. breathing, talking, movement, etc.) and obvious signs of distress" including "choking, difficulty breathing, discomfort, etc." Additionally, custody staff are instructed to check on incarcerated people every 15 minutes.

38.     Yet Mr. Williams fell in the shower before midnight count on September 6, 2021. He lay unconscious, with visibly and audibly labored breathing before midnight; he lay unconscious, with visibly and audibly labored breathing while midnight count was conducted, when a deputy should have checked every person for "signs of life" and "obvious signs of distress;" and he lay unconscious, with visibly and audibly labored breathing at 12:20am when other incarcerated people were finally able to check his vitals after count and call for help.

39.     Deputies called paramedics, who administered four rounds of Narcan. His toxicology report found no signs of drugs in his system. Mr. Williams was pronounced dead at 12:50am.

40.     Mr. Williams was 50 years of age when he passed away.

## FIRST CLAIM FOR RELIEF

**DELIBERATE INDIFFERENCE TO A SUBSTANTIAL RISK OF HARM TO HEALTH & SAFETY-42 U.S.C. § 1983, 14th and 8th Amendments**
**(On behalf of Russell Williams' Estate and Against DOES 1-10 and ALL Defendants except COUNTY)**

41.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-4 and 20 through 38 of this Complaint with the same force and effect as if fully set forth herein.

42.     During the weeks Mr. Williams was incarcerated in Men's Central Jail, DOES 1-10 were deliberately indifferent to the serious risk to Mr. William's health and safety posed by COVID-19.

43.     Mr. Williams was housed in an 88-person, open dorm, where he was unable to take CDC-recommended precautions to protect himself from the known dangers of exposure to COVID-19.

44.     Mr. Williams began experiencing symptoms of medical distress including dizziness, chills, and lethargy as early as August 18, 2021.

45.     Although Mr. Williams requested a COVID-19 vaccine, Defendants did not provide him with a vaccine.

46.     Although other incarcerated people reported Mr. Williams' symptoms to deputies, Mr. Williams received no medical attention.

47.     Although Mr. Williams fell in the shower, fell unconscious, and was breathing in a noticeably labored manner before and during midnight count and safety check, Mr. Williams received no medical attention.

48.     Only after other incarcerated people reported that Mr. Williams was not responsive, approximately one hour after he fell and after a count and safety check should have been conducted, did deputies call paramedics.

49.     Those decisions placed Mr. Williams at a substantial risk of danger and at risk of suffering severe harm and death.

50.      DOE Defendants did not take reasonable available measures to abate that risk, even though reasonable officials in the circumstances would have appreciated the high degree of risk involved--making the consequences of the defendants' conduct obvious.

51.     By not taking such measures, the defendants caused the Plaintiffs' injuries and ensuing death.

52.     It was objectively unreasonable for DOE Defendants to ignore the numerous objective signs and symptoms of serious medical distress.

53.     The DOE Defendants, by ignoring Mr. William's condition and by failing to provide proper medical attention, acted with deliberate indifference to his medical needs.

54.     Accordingly, DOE Defendants each are liable to Plaintiffs for compensatory and punitive damages under 42 U.S.C. § 1983 and the 14th, 5th, and 8th Amendment.

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

### (42 U.S.C. § 1983) (Asserted on behalf of the Estate of Jeff Westwood and Against Defendants COUNTY and DOES 1-10)

55.     Plaintiffs hereby repeat, restate, and incorporate each and every allegation in paragraphs 1-4, and 20 through 52 of this Complaint with the same force and effect as if fully set forth herein.

56.     Mr. Williams' *ADA* claim is based upon Defendant's failure to provide reasonable accommodation based on Mr. Williams' known disabilities, including schizoaffective disorder and manic depression.

57.     Symptoms of schizoaffective disorder include delusions, hallucinations, and impaired communication and speech, sometimes causing incoherence. Mr. Williams suffered from some of these symptoms; on June 24, 2021, Mr. Williams reported to jail medical staff that he was experiencing auditory hallucinations.

58.     Mr. Williams' disability was noted in his intake and subsequent medical documents. Mr. Williams was housed in a dorm that is designated for persons with unspecified mental illnesses. Defendants were on notice of Mr. Williams' disability as well as the risk of harm or death by COVID-19.

59.     Defendants had an obligation to monitor Mr. Williams for symptoms of COVID-19 and ensure that his disability did not prevent him from communicating his symptoms or obtaining necessary medical treatment.

60.     Defendants had an obligation to train staff, especially staff working in dorms designated for people with a mental health disability, to provide adequate and effective monitoring of and communication with incarcerated individuals with mental health needs as necessary to protect their health and safety. Defendants had an obligation to make reasonable accommodations where necessary to ensure that Mr. Williams' disability did not deny him equal access to the benefit of medical treatment in the jail.

61.     Claim Two is a claim for disability discrimination against Defendants and, pursuant to 42 U.S.C. § 1983, for violating Title II of the Americans with Disabilities Act (*ADA*) (public entities). Title II of the *ADA* prohibits disability-based discrimination by any public entity. *See* 42 U.S.C. §§ 12131-12132; 28 C.F.R. § 39.130; and 28 C.F.R. §35.130.

62.     Section 504 of the Rehabilitation Act prohibits discrimination against an individual based on disability by any program or entity receiving federal funds. *See* 29 U.S.C. §§ 794(a), (b)(1)(A), (b)(1)(B), and (b)(2)(B).

63.     These disability anti-discrimination laws impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability.

64.     Mr. Williams was disabled as defined in 42 U.S.C. § 12102 and 42 U.S.C. §§ 12131, 28 C.F.R. §§ 35.108, as he suffered a mental health impairment that substantially limited one or more of her major life activities.

65.     Defendant COUNTY is a program or entity that receives federal financial assistance.

66.     Defendant COUNTY is a public entity as defined by Title II of the *ADA*.

67.     Defendant COUNTY's jail, the Men's Central jail, is a facility and its operation comprises a program of service for purposes of Title II of the *ADA*.

68.     Mr. Williams was an individual qualified to participate in or receive the benefit of COUNTY's services, programs, or activities.

69.     Mr. Williams was discriminated against because of his disabilities by COUNTY's agents and employees at the COUNTY jail.

70.     Defendant COUNTY's discriminatory actions resulted in a complete failure to provide any medical services or to hospitalize and provide medication for the care and treatment of his respiratory illness until it was too late.

71.     Plaintiff Marie Williams brings this claim as both an individual and successor-in-interest to Mr. Williams, seeking survival damages for the violation of Mr. Williams' rights. Plaintiff also seeks attorney's fees and costs.

### THIRD CLAIM FOR RELIEF

### *MONELL*- FAILURE TO TRAIN (42 U.S.C. §1983)

### (Asserted by the Estate of Mr. Williams and Against Defendant COUNTY and DOES 1-10)

72.     Plaintiffs hereby repeat, restate, and incorporate each and every allegation in paragraphs 1-4, 20 through 69 of this Complaint with the same force and effect as if fully set forth herein.

73.     Defendant COUNTY knew about the risk of harm or death posed by the COVID-19 virus.

74.     Defendant COUNTY knew that CDC guidelines recommended the opportunity to socially distance and otherwise minimize exposure to COVID-19.

75.     Defendant COUNTY knew that Mr. Williams suffered from schizoaffective disorder and manic depression and reasonably should have known that they might need to accommodate these disabilities in monitoring him for COVID-19 symptoms and ensuring adequate communication between Mr. Williams and medical staff.

76.     Defendant COUNTY knew that Mr. Williams was experiencing symptoms similar to those of COVID-19 for up to three weeks before his death.

77.     Defendant COUNTY reasonably should have known that Mr. Williams was unconscious and breathing in a labored manner for almost one hour before his death.

78.     Defendant COUNTY knew that regular count and safety checks, including checking each incarcerated person for signs of life, is necessary to the safety and wellbeing of incarcerated people.

79.     Men's Central Jail was not equipped to care for acutely ill patients. Given the known limitations of the COUNTY jail, it was obvious that COUNTY jail detention staff, including the individual defendants, would need special training in order to adequately care for individuals with acute mental health needs

and to assess whether such patients should be transferred to the hospital based on symptoms including dizziness, chills, lethargy, and labored breathing.

80.     COUNTY failed to train its custody staff to implement adequate policies, procedures, and customs to protect individuals from exposure to COVID-19.

81.     COUNTY failed to train its custody staff to routinely offer COVID-19 vaccines and to administer such vaccines upon consent or request of any individual who was eligible.

82.     COUNTY failed to train its custody staff to properly monitor and respond to symptoms of COVID-19 and other respiratory illnesses.

83.     COUNTY failed to train its custody staff to properly monitor and ensure open and adequate communication with and medical care for incarcerated individuals with mental health needs.

84.     COUNTY failed to train its custody staff to properly conduct counts and safety checks.

85.     As a result of COUNTY's failure to adequately train and implement policies, Mr. Williams was caused undeserved pain and agony all culminating to his death on September 7, 2021.

86.     As a direct and legal result of Defendants' acts, Plaintiffs have suffered damages, including, without limitation, past pain and suffering, loss of life, loss of opportunity for life, and compensatory damages.   Such damages include attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF

### *MONELL*- UNCONSTITUTIONAL CUSTOM, POLICY
### OR PRACTICE (42 U.S.C. §1983)
### (On behalf of the Estate of Russell Williams and Against Defendant
### COUNTY and DOES 1-10)

87.     Plaintiffs hereby repeat, restate, and incorporate each and every allegation in paragraphs 1-4 and 20-84 of this Complaint with the same force and effect as if fully set forth herein.

88.     On and for some time prior to September 7, 2021, (and continuing to the present date) Defendants COUNTY deprived Plaintiffs' decedent of the rights and liberties secured to them by the Eighth, and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with reckless and deliberate indifference to the rights and liberties of Plaintiffs' decedent and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized county custom, policy, and practice of: acting deliberately indifferent to the serious medical needs of incarcerated individuals when defendants failed to take any meaningful corrective measures despite being previously placed on notice of their egregious practices resulting in prior deaths. The following is a list of *Monell* violations:

(a) COUNTY failed to train its custody staff to implement adequate policies, procedures, and customs to protect individuals from exposure to COVID-19.

(b) COUNTY failed to implement a custom, policy, and practice of offering COVID-19 vaccines and administering such vaccines upon consent or request of any individual who was eligible.

(c) COUNTY failed to implement a custom, policy, and practice of properly monitoring, recognizing, and responding to symptoms of COVID-19 and respiratory distress.

(d) COUNTY failed to implement a custom, policy, and practice of ensuring open and adequate communication with and medical care for incarcerated individuals with mental health needs.

(e) COUNTY failed to implement a custom, policy, and practice of properly conducting counts and safety checks as defined by COUNTY's Los Angeles Sheriff's Department's own Custody Division Policy Manual.

89.     As a result of COUNTY's failure to adequately train and implement policies, Mr. Williams was caused undeserved pain and agony all culminating in his death on September 7, 2021.

90.     By reason of the aforementioned policies and practices of Defendants and COUNTY, Plaintiffs have suffered the loss of their son and father, Russell Williams.

91.     Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

92.     By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant COUNTY acted with an intentional, reckless, and callous disregard for the well-being of decedent and his constitutional as well as human rights.

93.     Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants COUNTY were affirmatively linked to and were a significantly influential force behind the decedent's death.

94.     As a direct and legal result of Defendants' acts, Plaintiffs have suffered damages, including, without limitation, past pain and suffering, loss of life, loss of opportunity for life, compensatory damages, and such damages including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF
## 14th AMENDMENT-INTERFERENCE WITH FAMILIAL RELATIONS (Asserted by all Plaintiffs Against all DEFENDANTS except COUNTY and DOES 1-10)

95.     Plaintiffs hereby repeat, restate, and incorporate each and every allegation in paragraphs 1-4 and 20-94 of this Complaint with the same force and effect as if fully set forth herein.

96.     Decedent  Russell Williams had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with his mother, Marie Williams, father, Russell Williams, and children, Anthony Williams and Daniel McClanaham.

97.     Plaintiff  Ms. Williams had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her son, Russell Williams.

98.     Plaintiff  Mr. Williams, Sr. had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to

be free from state actions that deprive her of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with his son, Russell Williams.

99.    Plaintiff A. Williams had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with his father, Russell Williams.

100.    Plaintiff McClanaham had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with his father, Russell Williams.

101.    The aforementioned actions of Defendants and DOES 1-10, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Williams and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

102.    As a direct and proximate result of these actions, Mr. Williams experienced pain and suffering and eventually died.  Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with Mr. Williams.

103.    As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Williams, and will continue to be so deprived for the remainder of their natural lives.

104.    As a result of their misconduct, Defendants and DOES 1-10 are liable for Mr. William's injuries, either because they were integral participants in the

failure to provide medical care or because they failed to intervene to prevent these violations.

105.    Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Williams and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

106.    Plaintiffs brings this claim individually and seek wrongful death damages under this claim.  Plaintiffs also seek punitive damages and attorneys' fees under this claim.

## SIXTH CLAIM FOR RELIEF
### NEGLIGENCE – WRONGFUL DEATH
### (Against All Defendants and DOES 1-10)

107.    Plaintiffs hereby repeat, restate, and incorporate each and every allegation in paragraphs 1-4 and 20-106 of this Complaint with the same force and effect as if fully set forth herein.

108.    Plaintiffs bring this action pursuant to the California Wrongful Death statues as codified in Code of Civil Procedure § 377.60, § 377.32, and § 377.34.

109.    Mr. Williams is survived by his mother Ms. Williams; his father Mr. Williams, Sr; his son, A. Williams; and his son, McClanaham.

110.    Mr. Williams did not bring any action for personal injury in his lifetime, and no other action from the death of Mr. Williams has been commenced against the defendants.

111.    Under the recently pass Senate Bill 447, Plaintiffs, as the successors-in-interest to Mr. Williams, will also recover for any pre-death pain, suffering, and disfigurement that Mr. Williams endured before he died. Such survival damages are now recoverable under this newly enacted statute.

112.    Defendant COUNTY is vicariously liable for the negligent acts of its employees performed in the scope of their employment.

113.    Defendants and DOES 1-10 owed a duty of care to Mr. Williams while he was in their care and custody to prevent endangering a patient known to have a mental health disability from avoidable exposure to the known risks of COVID-19. Defendants further owed a duty of care to Mr. Williams to monitor, recognize, and respond to symptoms of COVID-19 including the respiratory distress he experienced after contracting COVID-19. Defendants owed a duty of care to respond to Mr. Williams' and other incarcerated peoples' requests that deputies and medical staff ensure that Mr. Williams got necessary medical care. Defendants owed a duty of care to perform proper safety checks and to observe incarcerated people for signs of life or distress, including noticing and responding to Mr. Williams when he fell unconscious with clearly labored breathing for approximately one hour leading up to his death.

114.    It was foreseeable that Mr. Williams, who was housed in an 88-person dorm, could be exposed to COVID-19. It was foreseeable that Mr. Williams, who had a mental health disability, might require accommodation to ensure adequate communication with medical staff. It was foreseeable that Mr. Williams, after he requested a COVID-19 vaccine, reported symptoms of COVID-19, began showing signs of dizziness, chills, lethargy, and respiratory distress, and after other incarcerated people requested medical attention for him, was at risk of dying from COVID-19. It was foreseeable that failing to perform any type of once Mr. Williams fell unconscious and was clearly experiencing respiratory distress

115.    Defendants breached their duty of care to ensure that Mr. Williams, an individual who was in the custody and care of Defendants, was reasonably safe from exposure to and death from COVID-19; was able to access medical care; was properly monitored for symptoms of illness; and was properly observed for his safety during routine checks. Defendants breached their duty of care when

they did not provide Mr. Williams with the COVID-19 vaccine; when they did not mitigate Mr. William's exposure to COVID-29 or monitor him for symptoms; when they did not respond to his or other incarcerated peoples' requests that he receive medical care; when they did not respond to obvious signs of medical distress; and when they did not notice or respond to his acute distress after he fell unconscious on September 6, 2021.

116.   Defendants knew, or in the exercise of reasonable care should have known, that by failing to take steps to protect Mr. Williams from contracting COVID-19, failing to respond to requests for medical attention and signs of medical distress, and failing to observe Mr. Williams for signs of life during safety check they were endangering the life of Mr. Williams.

117.   As a direct and proximate result of the acts and omissions of all Defendants and each of them, Mr. Williams has suffered injuries to his body and his mind all of which survive his death and are represented by Plaintiffs as successors-in-interest to Mr. Williams' special and general damages. Plaintiffs are additionally entitled to any general damages in a sum according to proof at the time of trial.

118.   Defendants' conduct was further done with malice and Defendants knew or should have known that to outright ignore Mr. Williams' and other incarcerated peoples' request that Mr. Williams receive medical attention and to fail to monitor or respond to signs of medical distress would place his life in danger. Defendants' conduct was done with willful and knowing disregard for Mr. Williams' safety, justifying an award of exemplary damages.

## SEVENTH CLAIM FOR RELIEF

### BANE ACT CAL. CIVIL CODE § 52.1 et seq.

### (Against All Defendants and DOES 1-10)

119.   Plaintiffs hereby repeat, restate, and incorporate each and every allegation in paragraphs 1-4 and 20-118 of this Complaint with the same force and effect as if fully set forth herein.

120.   Defendants showed a specific intent to violate Mr. Williams' constitutional rights through their reckless disregard for Mr. Williams' health, safety, and wellbeing.

121.   Defendants acted with reckless disregard in failing to take reasonable measures to abate the risk of COVID-19, failing to ensure that Mr. Williams had access to adequate medical care, failing to respond to requests for medical care and obvious signs of medical distress, failing to respond to Mr. Williams after he fell in the shower, and failing to respond to Mr. Williams after he fell unconscious and went into respiratory distress.

122.   When Defendants committed the above acts, they interfered with Mr. Williams' civil right to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to be free from cruel and unusual punishment, to be free from state actions that shock the conscience, and to life, liberty, and property.

123.   Defendants knowingly deprived Mr. Williams of his constitutional rights through acts which were inherently coercive, intimidating, and threatening by failing to provide medical care to Mr. Williams despite requests for care and obvious signs of acute medical distress.

124.   Defendants successfully interfered with the above rights of Mr. Williams and Plaintiffs.

125.   The conduct of Defendants was a substantial factor in causing the Plaintiffs' harms, losses, injuries, and damages.

126.    COUNTY is vicariously liable for the wrongful acts of employee DOES 1-10 pursuant to § 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of their employment if the employee's act would subject them to liability.

127.    Defendant DOES are vicariously liable under California law and the doctrine of respondeat superior.

128.    The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Mr. Williams' and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to the defendants.

129.    Plaintiffs bring this claim both individually and as successors-in-interest to Mr. Williams and seek survival and wrongful death damages under this claim. Plaintiff also seeks punitive damages and attorney's fees under this claim.

## EIGHTH CLAIM FOR RELIEF
### FAILURE TO SUMMON MEDICAL CARE G.C. § 845.6 & 844.6
### (Against All Defendants and DOES 1-10)

130.    Plaintiffs hereby repeat, restate, and incorporate each and every allegation in paragraphs 1-4 and 20-129 of this Complaint with the same force and effect as if fully set forth herein.

131.    California Government Code § 845.6 creates an affirmative duty for jail deputies to furnish or obtain medical care for an incarcerated person in their custody. In fact, a public employee, and the public entity employer if that employee is acting within the scope of their employment, is liable if the employee knows or has reason to know that the individual is in need of immediate medical care and fails to take reasonable action to summon such medical care.

132.    By virtue of the foregoing, Defendants knew or had reason to know that Mr. Williams had requested medical care; had been showing symptoms of

illness; had fallen in the shower and been unable to walk; and had fallen unconscious with visibly labored breathing. The failure to provide immediate medical care proximately caused Mr. Williams' death.

133. Mr. Williams desperately required medical care on September 6 and 7, 2021. Defendants had actual and constructive knowledge of Mr. Williams' need for medical attention during the last weeks and final day of his life.

134. Defendants failed to discharge the duty imposed upon them by G.C. § 845.6. As a direct and proximate result of Defendants' acts and/or omissions, here above described, Mr. Williams suffered serious physical injuries resulting in his untimely death.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against all Defendants, and DOES 1- 10 inclusive, as follows:

1. For compensatory including special and general damages according to proof;

2. For punitive damages against the individual defendants in an amount to be proven at trial;

3. For interest;

4. For reasonable costs of this suit and attorneys' fees per 42 U.S.C. §1988; and

5. For such further other relief as the Court may deem just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Date: August 16, 2022                    THE SEHAT LAW FIRM, PLC


                                         */s/ Cameron Sehat*
                                         Attorney for Plaintiffs